U.S. BANK NATIONAL ASSOCIATION, TRUSTEE, APPELLEE,
v. GULLOTTA, APPELLANT, ET AL.

[Cite as *U.S. Bank Natl. Assn. v. Gullotta,*
120 Ohio St.3d 399, 2008-Ohio-6268.]

(No. 2007–1144—Submitted March 12, 2008—Decided December 10, 2008.)

---

PFEIFER, J.

{¶ 1} The court below certified to us this question: "Whether or not each missed payment under a promissory note and mortgage yields a new claim such that any successive actions on the same note and mortgage involve different claims and are thus exempt from the 'two-dismissal rule' contained in Civ. R.

41(A)(1)." In this case, under these facts, we answer the question in the negative.

## Factual and Procedural Background

{¶ 2} This matter arises from the third foreclosure action filed by plaintiff-appellee U.S. Bank National Association against defendant-appellant Giuseppe Gullotta. All three foreclosure actions filed against Gullotta by U.S. Bank relate to the same note and mortgage. Gullotta argues that since U.S. Bank dismissed the first two actions pursuant to Civ.R. 41(A)(1)(a), the second dismissal constituted an adjudication upon the merits of U.S. Bank's claim, and res judicata therefore barred the third action. Given the facts of this particular case, we agree.

{¶ 3} In June 2003, Gullotta executed an adjustable rate note and a mortgage in the amount of $164,900 with MILA, Inc., which subsequently assigned the note to U.S. Bank. On April 9, 2004, U.S. Bank filed a complaint for money judgment, foreclosure, and relief, declared the entire debt due, and prayed for judgment in foreclosure in the entire amount of the principal due on the note, $164,390.91, plus interest at the rate of 7.35 percent per year from November 1, 2003. On June 8, 2004, U.S. Bank voluntarily dismissed that complaint pursuant to Civ.R. 41(A).

{¶ 4} On September 9, 2004, U.S. Bank filed a second complaint for money judgment, foreclosure, and relief. Again, the bank alleged a default under the note and mortgage, declared the entire debt due, and prayed for judgment in foreclosure in the amount of the principal due on the note, $164,390.91, plus interest at the rate of 7.35 percent per year from December 1, 2003. On March 15, 2005, U.S. Bank dismissed that complaint pursuant to Civ.R. 41(A). That second dismissal was filed by a different lawyer from the one who previously had filed the two earlier complaints and the first dismissal.

{¶ 5} On October 26, 2005, U.S. Bank filed another complaint for money judgment, foreclosure, and relief. Again, the bank alleged a default under the note and mortgage, declared the entire debt due, and prayed for judgment in foreclosure in the amount of the principal due on the note, $164,390.91, plus interest at the rate of 7.35 percent per year from November 1, 2003.

{¶ 6} On January 4, 2006, Gullotta filed a motion to dismiss the third action pursuant to Civ.R. 12(B)(6), arguing that pursuant to Civ.R. 41(A), the bank's second dismissal constituted an adjudication on the merits, rendering the third complaint barred by res judicata. On February 6, 2006, U.S. Bank filed a response to Gullotta's motion and also filed a motion for leave to file an amended complaint. U.S. Bank wrote in its response:

{¶ 7} "Defendant in his Motion to Dismiss claims the subject matter of the litigation is exactly the same as the first two cases that were filed in the Court of

Common Pleas, Stark County, Ohio. However, should the Court allow Plaintiff to amend its Complaint, Defendant's Motion to Dismiss would become moot. It is true that Plaintiff has brought these proceedings in this Court based upon the default of the note and mortgage that were the subject of the previous two case[s]. It is also true that the two previous actions were dismissed voluntarily under [Civ.R.] 41(A). Nevertheless, the instant proceedings would represent a new and different cause of action and, therefore, res judicata would not apply."

{¶ 8} On February 10, 2006, the trial court converted Gullotta's motion to dismiss into a motion for summary judgment because the motion was "founded on matters outside the pleadings." The trial court also granted U.S. Bank's motion for leave to file an amended complaint. In its amended complaint, U.S. Bank brought alternative claims. First, the bank sought judgment against Gullotta in the amount of $164,390.91 plus interest at the rate of 7.35 percent per year from December 1, 2003. In the alternative, the bank sought judgment against Gullotta in the amount of $164,390.91 plus interest at the rate of 7.35 percent per year from April 1, 2005. That April 1, 2005 date moved the start date for the collection of interest on the overall debt to a time after U.S. Bank's second dismissal.

{¶ 9} The trial court relied on the alternate date raised by the bank in its amended complaint in overruling Gullotta's motion for summary judgment. The court held:

{¶ 10} "The April 1, 2005 default date is after the second dismissal on March 13, 2005 and, therefore, could not have been included in either of the first two actions. Because the second dismissal is an adjudication on the merits, Defendant was at that time no longer in default and the note would be decelerated. However, Defendant's obligation to continue making payments would begin again in April of 2005. The current action covers months not litigated in the first two foreclosure actions and relates to a later delinquency in payments. Thus, because the subsequent action is based upon a demand and cause of action, res judicata does not apply." (Footnote omitted.)

{¶ 11} On April 18, 2006, U.S. Bank filed a motion for summary judgment, which the trial court granted on May 11, 2006. Gullotta appealed. The Fifth District Court of Appeals affirmed the trial court, agreeing that res judicata did not bar appellee's third foreclosure complaint because it covered dates of default and months not litigated in the first two complaints.

{¶ 12} The appellate court noted its disagreement with the decision of the Tenth District Court of Appeals in *EMC Mtge. Corp. v. Jenkins,* 164 Ohio App.3d 240, 2005-Ohio-5799, 841 N.E.2d 855. In *EMC,* the court had held that each missed payment under a promissory note and mortgage did not yield a new claim

that would obviate res judicata concerns upon an application of the two-dismissal rule. Id. at ¶ 26. The court below instead held:

{¶ 13} "We find that each new missed payment on an installment note is a new claim. Two Rule 41(A) dismissals of complaints, which allege the same default dates, would not be an adjudication that the note (debt) is no longer in existence because it has been paid. Rather, it would be an adjudication that the obligor is no longer in default under the terms of the note as of the date alleged and that the entire balance of the note is not due and payable immediately. The balance would still be due per the installment payment arrangements in the note." *U.S. Bank Natl. Assn. v. Gullotta,* 5th Dist. No. 2006CA00145, 2007-Ohio-2085, 2007 WL 1248407, ¶ 34.

{¶ 14} Finally, the court below cited a policy reason behind its decision, finding that imposing the two-dismissal rule to foreclosure actions might militate against settlement negotiations between lenders and borrowers:

{¶ 15} "In addition, the application of Rule 41(A) per the *EMC* case would discourage a lender, such as appellant, from working with a borrower, such as appellee, when the borrower defaults on a mortgage. Frequently, after filing a foreclosure action, a lender will work with the buyer so that the buyer can retain his or her property. The lender will then dismiss the foreclosure action. A lender would not be inclined to do so if a dismissal precluded a bank from eventually foreclosing on a borrower's property after a default. As a result, the number of foreclosures would increase as would the number of individuals losing their homes." Id. at ¶ 35.

{¶ 16} Gullotta filed a motion to certify a conflict in the court of appeals, asserting that the court's decision directly conflicted with the Tenth District's decision in *EMC*. The Fifth District granted Gullotta's motion, certifying the following issue:

{¶ 17} "Whether or not each missed payment under a promissory note and mortgage yields a new claim such that any successive actions on the same note and mortgage involve different claims and are thus exempt from the 'two-dismissal rule' contained in Civ.R. 41(A)(1)."

## Law and Analysis

{¶ 18} The question certified to us defies an answer that can apply to all cases. In this case, we hold that each missed payment under the promissory note and mortgage did not give rise to a new claim and that Civ.R. 41(A)'s two-dismissal rule does apply. Thus, res judicata barred U.S. Bank's third complaint.

{¶ 19} This case is this case. The significant facts here are that the underlying note and mortgage never changed, that upon the initial default, the bank accelerated the payments owed and demanded the same principal payment that it

demanded in every complaint, that Gullotta never made another payment after the initial default, and that U.S. Bank never reinstated the loan.

{¶ 20} With those facts as our backdrop, we address the effect of the bank's two voluntary dismissals on its attempt to prosecute its claim against Gullotta. Civ.R. 41(A) reads:

{¶ 21} "(1) * * * [A] plaintiff, without order of court, may dismiss all claims asserted by that plaintiff against a defendant by * * *

{¶ 22} "(a) filing a notice of dismissal at any time before the commencement of trial * * *.

{¶ 23} "Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that *a notice of dismissal operates as an adjudication upon the merits of any claim that the plaintiff has once dismissed in any court.*" (Emphasis added.)

{¶ 24} In *Olynyk v. Scoles,* 114 Ohio St.3d 56, 2007-Ohio-2878, 868 N.E.2d 254, ¶ 10, this court discussed the res judicata effect of two Civ.R. 41(A) voluntary dismissals on a third complaint filed by the same plaintiff against the same defendant:

{¶ 25} "It is well established that when a plaintiff files two unilateral notices of dismissal under Civ.R. 41(A)(1)(a) regarding the same claim, the second notice of dismissal functions as an adjudication of the merits of that claim, regardless of any contrary language in the second notice stating that the dismissal is meant to be without prejudice. * * * In that situation, the second dismissal is with prejudice under the double-dismissal rule, and res judicata applies if the plaintiff files a third complaint asserting the same cause of action. See 1970 Staff Note to Civ.R. 41 (when a dismissal is with prejudice, 'the dismissed action in effect has been adjudicated upon the merits, and an action based on or including the same claim may not be retried')."

{¶ 26} Because the second dismissal here functioned as an adjudication on the merits, res judicata would bar an action "based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, syllabus. Our question then is whether the claim in U.S. Bank's amended complaint arose out of the transaction or occurrence that was the subject matter of the previously dismissed actions.

{¶ 27} For purposes of res judicata analysis, a "transaction" is defined as a " 'common nucleus of operative facts.' " *Grava,* 73 Ohio St.3d at 382, 653 N.E.2d 226, quoting 1 Restatement of the Law 2d, Judgments (1982) 198–199, Section 24, Comment *b.* That a plaintiff changes the relief sought does not rescue the claim from being barred by res judicata: " 'The rule * * * applies to extinguish a claim

by the plaintiff against the defendant *even though the plaintiff is prepared in the second action * * * [t]o seek remedies * * * not demanded in the first action.'* (Emphasis added.)" *Grava,* 73 Ohio St.3d at 383, 653 N.E.2d 226, quoting 1 Restatement of the Law 2d, Judgments (1982) 209, Section 25.

{¶ 28} Do the claims here arise from a common nucleus of operative facts? U.S. Bank argues that its third bite at the apple is different from its first two because in its amended complaint, it sought interest only from April 1, 2005. However, all of the claims in all of the complaints filed by U.S. Bank against Gullotta arise from the same note, the same mortgage, and the same default. The note and mortgage have not been amended in any way. From the time of Gullotta's original breach, he has owed the entire amount of the principal. The amended third complaint alleged the same amount of principal due as the other two complaints.

{¶ 29} The key here is that the whole note became due upon Gullotta's breach, not just the installment he missed. There is a distinction between an action for recovery of installment payments under an installment note where the entire principal is accelerated, and an action to recover for nonpayment under an installment note where only the amount of the principal to date, and no future amount, is sought. The general rule that each missed payment in an installment loan gives rise to a separate cause of action does not hold true when there is an acceleration clause in the loan agreement:

{¶ 30} "The general rule regarding loans repayable in installments is that each default in payment may give rise to a separate cause of action. *Humitsch v. Collier* (Dec. 29, 2000), Lake App. No. 99–L–099 [2001 WL 20733], at 3, citing *Eden Realty Co. v. Weather[-]Seal, Inc.* (1957), 102 Ohio App. 219, 224, 142 N.E.2d 541. Further, a recovery for the monthly installments due at the time the action is commenced will not bar recovery for installments that subsequently come due. *General Dev. Corp. v. Wilber [Wilbur-]Rogers Atlanta Corp.* (1971), 28 Ohio App.2d 35, 37, 273 N.E.2d 908. Thus, a breach of an installment contract by non-payment does not constitute a breach of the entire contract. The parties to the note may avoid the operation of this rule by including an acceleration clause in the agreement. *Humitsch* at 3, citing *Buckeye Fed. S & L Assn. v. Olentangy Motel* (Aug. 22, 1991), Franklin App. No. 90–AP–1409 [1991 WL 224486]. An acceleration clause ' * * * requires the maker, drawer or other obligor to pay part or all of the balance sooner than the date or dates specified for payment upon the occurrence of some event or circumstance described in the contract * * *[,]' such as a default by nonpayment. Black's Law Dictionary (7th Ed. Rev. 1999) 12." *Citizens Bank of Logan v. Marzano,* 4th Dist. No. 04CA4, 2005-Ohio-163, 2005 WL 103165, ¶ 16.

{¶ 31} By agreeing to an acceleration clause, the parties in this case have avoided the operation of the general rule that nonpayment on an installment loan does not constitute a breach of the entire contract. In a contract with an acceleration clause, a breach constitutes a breach of the entire contract. Once Gullotta defaulted and U.S. Bank invoked the acceleration clause of the note, the contract became indivisible. The obligations to pay each installment merged into one obligation to pay the entire balance on the note.

{¶ 32} Despite the existence of the acceleration clause, the court below held that each successive time that Gullotta failed to make a payment, a new cause of action arose. We agree with the contrary position adopted by the court in *EMC*. *EMC* is akin to this case. There, as here, the defendant missed the first payment under the note and mortgage and continually remained in default. All the complaints against the mortgagor in *EMC* "sought judgment for the entire amount of the principal due under the note, with accrued interest, late charges, advances for taxes and insurance, and costs." *EMC*, 164 Ohio App.3d 240, 2005-Ohio-5799, 841 N.E.2d 855, at ¶ 26. The mortgagor never "cured his default or had his loan reinstated." Id. The *EMC* court refused to adopt the proposition that each missed payment under a promissory note and mortgage yields a new claim, such that any successive actions on the same note and mortgage involve different claims and are, thus, exempt from the two-dismissal rule. The court wrote that "EMC's position would render the Civ.R. 41(A)(1) two-dismissal rule meaningless in the context of foreclosure actions because every successive attempt to foreclose a mortgage could be construed as a new claim." Id. at ¶ 23. Nothing in Civ.R. 41(A) indicates that it should not apply to foreclosure actions.

{¶ 33} Civ.R. 41(A) would not apply to bar a third claim if the third claim were *different* from the dismissed claims. As the court in *EMC* pointed out, there are examples from Ohio courts where successive foreclosure actions were indeed considered to be different claims. In those cases, however, the underlying agreement had significantly changed or the mortgage had been reinstated following the earlier default. In *Aames Capital Corp. v. Wells* (Apr. 3, 2002), Summit App. No. 20703, 2002 WL 500320, the mortgagor argued that res judicata barred a second foreclosure action on the same note and mortgage. In the first foreclosure action, the trial court had ruled against the mortgagee and required it to reinstate the note and mortgage. The mortgagee filed its second foreclosure action when the mortgagor failed to make payments on the *reinstated* note. The court in *Aames* held, "As the bases for the two complaints were different, the present action is not barred by res judicata." *Aames* at *5.

{¶ 34} In *Midfed Sav. Bank v. Martin* (July 13, 1992), Butler App. No. CA91–12–202, 1992 WL 165143, the court held that res judicata did not prevent the mortgagee from bringing a second foreclosure action on the same note because

the entry in the first foreclosure action stated that the mortgagee's claim related only to the delinquency that had arisen up to the date of judgment. The mortgagor had paid the amount of the original delinquency and became current on the note, leading to a dismissal with prejudice of the first foreclosure action. *Midfed Sav. Bank* at *1, 3. Thus, the court found that the second delinquency was distinct from the first.

{¶ 35} In *Homecomings Fin. Network, Inc. v. Oliver*, Hamilton App. No. C–020625, 2003-Ohio-2668, 2003 WL 21202732, the court found that a second foreclosure action differed from the first because the claims involved different acts of default by the mortgagors, as well as different rates of interest and different amounts of principal owed. These distinctions thwarted the mortgagors' res judicata argument.

{¶ 36} There are no such differences among U.S. Bank's claims in this case. Here, in an attempt to get around having its claim barred by res judicata, U.S. Bank amended its third complaint to include a prayer for interest from April 1, 2005. That amendment was merely a change to the complaint, not a change in the common nucleus of operative facts supporting the claim. The complaint still arose from Gullotta's original default, when the entire principal became due. Gullotta did not make a single payment after the debt was first declared due, the parties changed none of the terms of the note, and U.S. Bank asked for the same amount of principal in each of its complaints.

{¶ 37} Although U.S. Bank's complaint changed, the operative facts remained the same. Plaintiffs cannot save their claims from the two-dismissal rule simply by changing the relief sought in their complaint. Allowing U.S. Bank to do so would be like allowing a plaintiff in a personal-injury case to save his claim from the two-dismissal rule by amending his complaint to forgo a couple of months of lost wages.

{¶ 38} The court below was concerned that an interpretation like the court's in *EMC* could lead to banks' deciding not to negotiate with mortgagors to assist them in becoming current on their mortgages. We agree that negotiations between a mortgagee and mortgagor to prevent an ultimate foreclosure are desirable for all the parties and for the state as a whole. Here, there is nothing in the record to indicate that there were any fruitful negotiations between the parties. Had there been any change as to the terms of the note or mortgage, had any payments been credited, or had the loan been reinstated, then this case would concern a different set of operative facts, and res judicata would not be in play. Instead, 15 months passed between the date of the alleged default and U.S. Bank's second voluntary dismissal. In that period, nothing changed between the parties. It remained within U.S. Bank's control as to whether it should dismiss

its second complaint. It did dismiss the complaint a second time, and Civ.R. 41(A) operated as it would against any other plaintiff.

{¶ 39} Accordingly, we reverse the judgment of the appellate court.

Judgment reversed
and cause remanded.

MOYER, C.J., and O'CONNOR, LANZINGER, and CUPP, JJ., concur.

LUNDBERG STRATTON and O'DONNELL, JJ., dissent.

---

**O'DONNELL, J., dissenting.**

{¶ 40} I respectfully dissent and would affirm the decision of the court of appeals. In my view, the double-dismissal rule set forth in Civ.R. 41(A)(1)(a) does not apply in this case because U.S. Bank presented a different cause of action in its third complaint.

{¶ 41} U.S. Bank filed three actions to foreclose on Gullotta's mortgage. In its first and second actions, the bank sought to invoke the acceleration clause to recover the full amount of the principal, $164,390.91 at 7.35 percent interest, alleging that Gullotta had defaulted as of November 1, 2003. The bank voluntarily dismissed both actions pursuant to Civ.R. 41(A)(1)(a). In the third action, however, the bank alleged that Gullotta was in default as of April 1, 2005, one payment period after it had dismissed the second foreclosure action. Thus, the bank sought the full amount of principal and interest from that date, not November 1, 2003.

{¶ 42} As the majority recognizes, "The general rule regarding loans repayable in installments is that each default in payment may give rise to a separate cause of action." *Citizens Bank of Logan v. Marzano*, 4th Dist. No. 04CA4, 2005-Ohio-163, 2005 WL 103165, ¶ 16. "Further, a recovery for the monthly installments due at the time the action is commenced will not bar recovery for installments that subsequently come due. * * * Thus, a breach of an installment contract by non-payment does not constitute a breach of the entire contract." Id. However, when the parties have included an acceleration clause in the contract, the failure to pay one installment results in a breach of the entire contract, with the entire balance becoming due. Id.

{¶ 43} In this case, Gullotta's mortgage has an acceleration clause, providing that upon his failure to make any monthly payment, the bank has a right to demand from him "the full amount of Principal which has not been paid and all the interest that [Gullotta] owe[s] on that amount." Thus, when he defaulted in November 2003, U.S. Bank accrued a cause of action that would have entitled it to the entire amount of the loan, including interest. The bank, however, failed to

prosecute this cause of action for this default, twice dismissing its complaints pursuant to Civ.R. 41(A)(1)(a).

{¶ 44} In *Olynyk v. Scoles,* 114 Ohio St.3d 56, 2007-Ohio-2878, 868 N.E.2d 254, ¶ 10, we explained that "when a plaintiff files two unilateral notices of dismissal under Civ.R. 41(A)(1)(a) regarding the same claim, the second notice of dismissal *functions as an adjudication of the merits of that claim * * *.* In that situation, the second dismissal is with prejudice under the double-dismissal rule, and res judicata applies *if the plaintiff files a third complaint asserting the same cause of action.*" (Emphasis added.)

{¶ 45} Accordingly, U.S. Bank's voluntary dismissal of its second complaint functioned as an adjudication on the merits of the cause of action based on Gullotta's default. In other words, the bank failed to prove, and can never again prove, that Gullotta was in default as of November 1, 2003.

{¶ 46} U.S. Bank's third complaint, however, asserted that Gullotta had defaulted on the loan in April 2005, subsequent to the date that the bank voluntarily dismissed its second complaint. The question, therefore, is whether the third complaint presented a different cause of action.

{¶ 47} In concluding that it did not, the majority reasons that "[o]nce Gullotta defaulted, and U.S. Bank invoked the acceleration clause of the note, the contract became indivisible. The obligations to pay each installment merged into one obligation to pay the entire balance on the note." Moreover, it states, "The [third] complaint still arose from Gullotta's original default, when the entire principal became due." Thus, according to the majority, U.S. Bank's third complaint presented the same claim as the first two complaints because the bank sought the full amount of principal under the acceleration clause, even though Gullotta had already defaulted in November 2003.

{¶ 48} In my view, this conclusion rests on the assumption that "[f]rom the time of Gullotta's original breach, he has owed the entire amount of the principal." This "original breach," which occurred in November 2003, was the subject matter of U.S. Bank's first two complaints. But pursuant to *Olynyk,* the voluntary dismissal of the bank's second complaint for this cause of action functioned as an adjudication that Gullotta had *not* defaulted in November 2003. In other words, there was no breach of contract at that time.

{¶ 49} For this reason, Gullotta's mortgage payments were not accelerated in November 2003. As stated in *Marzano,* "An acceleration clause '* * * requires the maker, drawer or other obligor to pay part or all of the balance sooner than the date or dates specified for payment *upon the occurrence of some event or circumstance described in the contract * * *[,]*' such as a default by nonpayment." (Emphasis added.) 2005-Ohio-163, 2005 WL 103165, ¶ 16, quoting Black's Law Dictionary (7th Ed.1999) 12. Here, the double-dismissal of this

cause of action functioned as an adjudication on the merits, to the effect that there was no default in November 2003. Consequently, the acceleration clause was not triggered, and Gullotta had no obligation to make any more than his regular monthly payments after U.S. Bank voluntarily dismissed its second complaint in March 2005.

{¶ 50} But Gullotta did not make the next payment after the second dismissal. As a result, the bank filed a third complaint, alleging that Gullotta had defaulted in April 2005. Although the complaint also alleges a breach of contract, the cause of action is based on a breach different from the one in the first two actions. Res judicata and the double-dismissal rule do not apply here because the claim does not "aris[e] out of the transaction or occurrence that was the subject matter of the previous action." *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, syllabus.

{¶ 51} The majority also reasons that the causes of action in the three complaints are identical because U.S. Bank sought the same amount of principal in all three actions. But the double-dismissal rule applies only to identical causes of action, not to identical prayers for relief. See *Olynyk,* 114 Ohio St.3d 56, 2007-Ohio-2878, 868 N.E.2d 254; Civ.R. 41(A)(1)(a). Moreover, a claimant may demand any amount or type of relief for a cause of action, but this demand does not mean the claimant is entitled to that relief. Thus, the fact that U.S. Bank sought the same amount of principal in its third complaint as it did the first and second complaints is irrelevant to the determination of whether the *claim* is barred by the double-dismissal rule.

{¶ 52} Furthermore, the instant matter is distinguishable from *EMC Mtge. Corp. v. Jenkins,* 164 Ohio App.3d 240, 2005-Ohio-5799, 841 N.E.2d 855, in which the mortgagee filed three successive complaints, each of which alleged *the same date* of default. And while the majority cites several other appellate decisions, these cases are inapposite because they provide only *other* bases for not applying the double-dismissal rule.

{¶ 53} I am persuaded, rather, by the decision of the Supreme Court of Florida in *Singleton v. Greymar Assocs.* (Fla.2004), 882 So.2d 1004, which addressed virtually the same issue we are confronted with here. In that case, the mortgagee, Greymar Associates, filed a foreclosure action against the mortgagor, Gwendolyn Singleton, based on her alleged failure to make payments from September 1, 1999, to February 1, 2000. Greymar also sought acceleration of the debt pursuant to the contract. The trial court, however, dismissed the action with prejudice after Greymar failed to appear at a case-management conference. Greymar then filed a second foreclosure action, but it changed the alleged date of default to April 1, 2000. The trial court rejected Singleton's defense that

dismissal of the first action with prejudice barred any successive claim, and the appellate court affirmed.

{¶ 54} On further appeal, the Supreme Court of Florida also affirmed:

{¶ 55} "While it is true that a foreclosure action and an acceleration of the balance due based upon the same default may bar a subsequent action on that default, an acceleration and foreclosure predicated upon subsequent and different defaults present a separate and distinct issue. * * * For example, a mortgagor may prevail in a foreclosure action by demonstrating that she was not in default on the payments alleged to be in default, or that the mortgagee had waived reliance on the defaults. In those instances, the mortgagor and mortgagee are simply placed back in the same contractual relationship with the same continuing obligations. Hence, an adjudication denying acceleration and foreclosure under those circumstances should not bar a subsequent action a year later if the mortgagor ignores her obligations on the mortgage and a valid default can be proven." Id. at 1007.

{¶ 56} The court further stated that "[i]f res judicata prevented a mortgagee from acting on a subsequent default even after an earlier claimed default could not be established, the mortgagor would have no incentive to make future timely payments on the note. The adjudication of the earlier default would essentially insulate her from future foreclosure actions on the note—merely because she prevailed in the first action. Clearly, justice would not be served if the mortgagee was barred from challenging the subsequent default payment solely because he failed to prove the earlier alleged default." Id. at 1007–1008.

{¶ 57} Other courts have reached similar conclusions. See, e.g., *Afolabi v. Atlantic Mtge. & Invest. Corp.* (Ind.App.2006), 849 N.E.2d 1170, 1175 (*"res judicata* does not bar successive foreclosure claims * * *. Here, the subsequent and separate alleged defaults under the note created a new and independent right in the mortgagee to accelerate payment on the note in a subsequent foreclosure action"); *Fairbank's Capital Corp. v. Milligan* (C.A.3, 2007), 234 Fed.Appx. 21, 24 (a "stipulated dismissal with prejudice * * * cannot bar a subsequent mortgage foreclosure action based on defaults occurring after dismissal of the first action * * *. If we were to so hold, it would encourage a delinquent mortgagor to come to a settlement with a mortgagee on a default in order to later insulate the mortgagor from the consequences of a subsequent default. This is plainly nonsensical").

{¶ 58} Under today's holding, the voluntary dismissal of U.S. Bank's second action in effect results in an adjudication that Gullotta has no further obligation to make payments toward the mortgage and that the bank will not be able to foreclose. While this outcome favors the defaulting homeowner in this case, the impact of the majority opinion will work against Ohio homeowners because

mortgagees will have little incentive to resolve defaults with distressed mortgagors.

{¶ 59} For these reasons, I respectfully dissent.

Lundberg Stratton, J., concurs in the foregoing opinion.

———————

Shapiro & Felty, L.L.P., and John A. Polinko, for appellee U.S. Bank National Association.

McKinzie & Associates, Timothy D. McKinzie, and Kerry G. MacKenzie, for appellant.